CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 24, 2024
LAURA A. AUSTIN, CLERK
BY s/ S. MELVIN
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **MAKINA VE KIMYA ENDUSTRISIS A.S.,** | ) ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| **ZENITH QUEST CORPORATION, ET AL.** | ) ) ) |
| **Defendants.** | ) ) |

Civil Action No. 3:20-cv-00072

By: Hon. Robert S. Ballou
United States District Judge

## MEMORANDUM OPINION

Following a two-week trial, the jury returned a verdict against the plaintiff, Makina Ve Kimya Endustrisis, A.S. ('MKE") on its claims against the defendants[1] (collectively "Zenith") and found in favor of Zenith on its counterclaim, awarding $720,000.00. Unhappy with this outcome, MKE moves under Fed. R. Civ. P. 50(b) for judgment as a matter of law[2], and, alternatively, moves for a new trial under Rule 59. MKE's motions are **DENIED**.

**I.    Factual and Procedural History**

This action arises from the long-term business relationship between MKE and the various Zenith entities. MKE asserted claims for breach of contract under three contracts (a 2013, 2017 and 2019 Agreement), trademark infringement, fraudulent registration of MKE's trademark,

---

[1] MKE brought this action against Kutlay Kaya and corporate defendants Zenith Quest Corporation, Zenith Quest International, Inc., and Zenith Firearms, Inc. and the parties made no clear effort to distinguish liability between the defendants, often referring to them collectively. Defendant Kutlay Kaya was dismissed "to the extent he is named as a party" during trial. Dkt. 451. Likewise, Zenith brought the counterclaims in the name of the corporate entities collectively and no effort was made to separate which entity may have had a right of action against MKE, nor did MKE raise any objection on that basis.

[2] MKE's motion is filed as a motion for judgment notwithstanding the verdict. "The amendment to Fed. R. Civ. P. 50 changed the label of a post-trial motion from 'judgment notwithstanding the verdict' to 'judgment as a matter of law' in December 1991." *Holb v. City of Beaufort*, 996 F.2d 1211 (4th Cir. 1993). However, the amendment "did not change the standard of proof." *Id.* (citing Fed. R. Civ. P. 50 advisory committee notes).

unjust enrichment, false advertising, and defamation. Zenith counterclaimed for breach of contract and unjust enrichment. The MKE claims under the 2019 contract related to Zenith's failure to pay the amounts it owed for previous firearms and ammunition purchases. MKE also contended that Zenith fraudulently registered its trademark and used the mark to promote its own products. Zenith's counterclaims included that MKE breached its obligations under the 2019 contract, including its obligation to provide firearms manufactured to the standards acceptable in the U.S. market. Ultimately, the case went to the jury on MKE's claim and Zenith's counterclaim under the 2019 Agreement, as well as MKE's trademark infringement, fraudulent registration, and false advertising claims.

Following a nine-day trial, the jury returned a verdict in favor of Zenith on all claims and awarded Zenith $720,000.00 on its counterclaim against MKE for breach of the 2019 Agreement. The court stayed entry of judgment pending the filing of post-trial motions by MKE, which it timely filed.

## II.     Law and Analysis

MKE seeks judgment as a matter of law under Rule 50(b) or alternatively, a new trial under Rule 59. At trial, MKE moved under Rule 50(a) for judgment as a matter of law on only a single issue relating to Zenith's damages. Now, Zenith contends that MKE is precluded from seeking relief under Rule 50(b) on any issue not preserved at trial. A motion under Rule 50(a) for judgment as a matter of law prior to the close of evidence is a prerequisite to challenging the jury's verdict following trial. "A Rule 50(b) motion may only be made as a renewal of a motion previously made on the same grounds under Rule 50(a)." *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).

MKE's motion for judgment as a matter of law sweeps much more broadly than the narrow motion directed at Zenith's counterclaim damages during trial. Now, MKE asks for relief "on the bases that the jury verdict regarding (1) the 2019 Agreement and (2) MKE's trademark infringement claim and the Made in the USA claim is contrary to evidence and law." Dkt. 456 at 4. Yet, MKE never moved for judgment under Rule 50(a) on these grounds, and therefore it cannot renew such a motion under Rule 50(b). At the close of Zenith's presentation of evidence, MKE moved for judgment as a matter of law under Rule 50(a) on the sole issue of counterclaim damages. Trial Tr. Dec. 7, 2023, Dkt. 448 at 119. Prior to that MKE had advised the court, "we do plan to make a brief oral motion, Rule 50 motion for judgment as to damages, counterclaim damages" *Id.* at 6. Specifically, MKE moved for judgment as a matter of law on Zenith's claims for lost profits relating to the 3,600 weapons, arguing that Zenith provided no proof of any modification to the 2019 Agreement and did not make the timely payment required under the contract – thus, "without performance, without compliance with the contract, there can be no damages." *Id.* at 117-18. MKE also argued that Zenith failed to provide sufficient evidence of the number of weapons, and thus failed to adequately prove their lost profits. *Id.* at 119.

Because "a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion," I find MKE's failure to bring a Rule 50(a) motion prevents it from bringing a Rule 50(b) motion seeking any relief not sought in its Rule 50(a) motion. *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996) (finding the Rule 50(a) motion legally sufficient to preserve review). Still, as discussed below, even assuming a Rule 50(b) motion is proper here, there is no basis for relief, and I deny the motion.

A. <u>Motion for Judgment as a Matter of Law</u>

Rule 50(a)(1) authorizes a court to grant judgment as a matter of law where there is "no legally sufficient evidentiary basis for a reasonable jury to find" for the opposing party on an issue. "This standard largely 'mirrors' the summary-judgment standard, the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record." *Dupree v. Younger*, 598 U.S. 729, 731–32 (2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986)). The motion "may be made at any time before the case is submitted to the jury [and] must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Where the court does not grant a motion for judgment as a matter of law during trial under Rule 50(a), the movant may file a renewed motion for judgment as a matter of law within a specified time under Rule 50(b). Fed. R. Civ. P. 50(b). As MKE has done here, the movant may also include an alternative request for a new trial under Rule 59. *Id.*

Thus, Rule 50(b) authorizes a party to renew its motion for judgment as a matter of law after the return of the jury verdict. In such case, "[w]hen a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 610 (4th Cir. 2021) (quoting *Int'l Ground Transp. v. Mayor & City Council of Ocean City, MD*, 475 F.3d 214, 218–19 (4th Cir. 2007)). In reviewing the jury's verdict, the court must construe all the facts, and all the inferences drawn from the evidence, in favor of the non-movant. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150–151 (2000). The court

must neither weigh the evidence nor make credibility determinations; and if "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 332 (4th Cir. 2013) (quoting *Myrick v. Prime Ins. Syndicate, Inc.,* 395 F.3d 485, 489–90 (4th Cir. 2005)). In fact, the court shall assume that the "testimony in favor of the non-moving party is credible, 'unless totally incredible on its face,' and ignore the substantive weight of any evidence supporting the moving party." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (citing *Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1419 (4th Cir. 1991)). "Accordingly, the Court must affirm if a 'rational trier of fact' could have reached the jury's conclusion." *Emerson Creek Pottery v. Emerson Creek Events*, No. 6:20-CV-54, 2022 WL 3702918, at *2 (W.D. Va. Aug. 26, 2022) (quoting *Reeves,* 530 U.S. at 153).

MKE moves for judgment as a matter of law regarding the 2019 Agreement, as well as MKE's trademark infringement claim and Made in the USA claims, arguing that the jury could only have found in MKE's favor on these claims. MKE contends that the court permitted excessive, irrelevant, and prejudicial testimony which unfairly impacted the jury verdict. However, beyond falling outside the scope of MKE's Rule 50(a) motion, arguments on the insufficiency of the evidence essentially ignore evidence favorable to Zenith. I affirm the jury verdict because I find that a rational trier of fact could have reached the jury's conclusions.

(1) Breach of the 2019 Agreement

On the breach of the 2019 Agreement claim, the jury found that MKE breached the 2019 Agreement, and Zenith did not. The jury awarded Zenith damages in the amount of $720,000.00 for MKE's breach. The evidence from Zenith showed that the 2019 Agreement required MKE to ship firearms that Zenith could sell in the American market. Zenith contended that one purpose

5

of the 2019 Agreement was to generate sales proceeds to fund the payment plan to retire the debt outlined in the 2019 Agreement. Zenith submitted evidence to the jury that MKE materially breached the 2019 Agreement before any breach by Zenith by: (1) failing to adjust the debt payment plan as required by paragraphs 4.2.11 and 4.2.12 of the 2019 Agreement because of shipping delays, (2) keeping Zenith's down payment for the June firearms shipment, and (3) cancelling the 2019 Agreement in August 2019, despite applying the June down payment to the installment debt. Other evidence included Zenith receiving defective firearms from MKE in March and May 2019. Zenith also adduced evidence that a defective shipment was not considered a timely shipment under the 2019 Agreement that required prompt payment from Zenith. The evidence included a shipment report from Zenith showing the defects in the May shipment (Ex. D80A), a list of warranty claims from the March and May shipments (Ex. D92), and testimony from Zenith's armorers, Mr. Williams and Mr. Pannell, regarding the defects. *See generally* Dkt. 445. Ms. Kaya of Zenith testified that because of the severe defects in the shipments received, she could not immediately sell the firearms in the United States. This constituted a delay in shipment under the 2019 Agreement. Trial Tr. Dec. 6. 2023, Dkt. 447 at 170; Trial Tr. Dec. 7, 2023, Dkt. 448 at 90-92.

Zenith presented evidence to the jury that the installment debt payment was delayed because of the delay in the June 2019 shipment, and that Zenith requested, but did not receive, a corresponding adjustment to the installment debt payment plan, as provided by the 2019 Agreement. Trial Tr. Dec. 6, 2023, Dkt. 447 at 162-65. The jury also heard evidence that MKE refused to refund Zenith's June 2019 down payment, which Zenith requested because MKE's shipment of firearms would be delayed up to 12 months; instead, MKE applied the June 2019 down payment of $578,00.00 to the installment debt. Trial Tr. Dec. 6, 2023, Dkt. 447 at 168-70.

Based on the evidence it heard at trial, a rational trier of fact could have concluded that MKE materially breached the 2019 Agreement first, and thus, MKE's motion for judgment as a matter of law on the 2019 Agreement claims is denied.

Relatedly, I also affirm the jury's award of $720,000.00 to Zenith because of MKE's breach of the 2019 Agreement. MKE argues that the jury's verdict awarding lost profits to Zenith cannot stand because the evidence at trial established that Zenith "committed the first material breach" by failing to make timely payments for its requested shipments. Dkt. 456 at 24. MKE argues that there is "no contractual basis or foundation for any damages" and because Zenith had no right under the contract to receive the firearms shipments, there is no evidence to support the jury's award of $720,000.00. *Id.* at 26. The verdict form asked the jury to decide whether Zenith or MKE breached the 2019 Agreement, and if yes for either party, whether the opposing party is entitled to damages as a result of the breach, and if so, the amount of damages. The verdict form does not ask the jury to categorize its award of damages, or to identify how the 2019 Agreement was breached, and I need not speculate. There is sufficient evidence to support the damage award, including by the categories of damages Zenith requested in its closing argument.

(2) Trademark Infringement and False Advertising Claims

With respect to MKE's claim for trademark infringement, the jury found that Zenith did not infringe MKE's trademark, and I find there is a legally sufficient basis for this finding. The jury heard evidence that MKE knew Zenith used the MKE mark at the 2020 SHOT Show but did not object to that use. In fact, during this timeframe, the parties discussed a continuing business relationship. *See e.g.* Trial Tr. Dec. 5, 2023, Dkt. 446, at 1-2. Likewise, the jury had a legally sufficient basis to find that the advertisements where Zenith used the MKE mark were not

trademark infringement, including nominative fair use to allow Zenith to re-sell the firearms it purchased from MKE.

Regarding MKE's false advertising claim, the jury found that Zenith did not falsely advertise "the ZF-5 firearm as 'Made in America' or similar terms." Dkt. 427. I find there is a legally sufficient basis for this finding. MKE argues that the jury verdict was not supported by substantial evidence because the "firearms included many foreign components" and thus do not meet the requirement that "virtually all" of the firearm components be made in the United States. Jury Instruction 39 provided:

> The Federal Trade Commission (FTC) has issued rules governing when a product can be labeled as "Made in USA" or "Made in America" or similar terms. According to these rules, the three following criteria must be met in order to claim that a product is "Made in USA":
>
> 1) final assembly or processing of the product occurs in the USA;
> 2) all significant processing occurs in the USA; and
> 3) all or virtually all ingredients or components of the product are made and sourced in the USA.
>
> These criteria are only one factor to consider of whether Zenith made a false or misleading description of fact or representation of fact in a commercial advertisement about Zenith's products.

Trial Tr. Dec. 8, 2023, Dkt. 449 at 37. As Zenith points out, instead of a bright line rule regarding when the FTC standard of "all or virtually all" of the components is met, courts have evaluated the standard on a case-by-case basis. The jury heard evidence that the final assembly and all significant processing occurs in the United States, in Afton, Virginia. Trial Tr. Dec. 6, 2023, Dkt. 447 at 206. The jury also heard evidence from a stipulation provided by Zenith's supplier, VirTex, regarding only certain firearm parts, and specifying that some of these parts have never been made in the United States, others were made 50% of the time or more outside the United States, and still others 50% or more of the time inside the United States. From that

information, the jury heard testimony calculating the total cost of the parts from these three categories as $151.10, compared to the total cost of manufacturing the ZF-5 firearm of $1,200.00. Trial Tr. Dec. 6, 2023, Dkt. 447 at 197-206. Here, I find the jury had a legally sufficient basis for finding Zenith did not falsely advertise "the ZF-5 firearm as 'Made in America' or similar terms."

(3) Evidence Presented to Jury

MKE's contention that Zenith made improper and prejudicial arguments at trial, infecting the jury's verdict, is not supported by the record. This includes Zenith's references to Mr. Kaya having a degree in Religion, being a pastor, or meeting his wife at a Christian mission camp, and references to MKE being a Turkish government entity. Further, to the extent MKE claims that counsel for Zenith disparaged Turkey as "some other terrible country in the world" that mischaracterizes the record, as that did not occur. In fact, counsel thanked the jury for their participation and favorably comparing the legal process in the United States to other countries. Tr. Tr. Dec. 8, Dkt. 449 at 150. MKE did not object to these statements, and I find there is no evidence that the jury's decision was based on improper factors. I also find that references to the Ohntrup Judgment during trial generally complied with my previous order. MKE has provided only a single citation to the transcript for this argument,[3] claiming that Zenith asked for damages of its remaining payment of the Ohntrup Judgment ($25,001.00) under an unjust enrichment theory. However, the transcript shows that Zenith asks for those damages under a breach of contract claim for the 2019 Agreement. Trial Tr. Dec. 8, 2023, Dkt. 449 at 148-49. Finally, MKE did not object to the references to the Ohntrup Judgment in closing argument.

---

[3] MKE provides additional record citations in its subsequent discussion of the Ohntrup Judgment and 2017 Agreement in its alternative motion for a new trial. Dkt. 456 at 49-57.

Regarding references to the 2017 Agreement, I denied MKE's motion *in limine* to exclude evidence and testimony relating to previously dismissed claims. Dkt. 381. In the motion *in limine*, MKE asked the court to exclude, among other things, evidence or argument relating to Zenith's counterclaims for breach of the 2017 Agreement. Dkt. 359. I denied the motion *in limine* (Dkt. 381), I also stated I would address admissibility as it arose at trial. Hrg. Tr. Nov. 21, 2023, Dkt. 430 at 128. MKE has not provided specific record citations regarding errors related to referencing the 2017 Agreement and, as pointed out by Zenith on brief, both sides referenced events prior to the 2019 Agreement, when these events were relevant to remaining claims. I find that references to the 2017 Agreement at trial were neither improper nor prejudicial and did not unfairly influence the jury's decision.

B. Motion for a New Trial

Under Rule 59, a district court has discretion to grant a new trial on "all or some of the issues" in the case. Fed. R. Civ. P. 59(a)(1). The Fourth Circuit requires the district court to grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Cline*, 144 F.3d at 301 (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)) (internal quotation marks omitted). Unlike in a motion for judgment as a matter of law, in a motion for a new trial the court is "permitted to weigh the evidence and consider the credibility of witnesses." *Id.* The first and second prongs require factual determinations from the court, and the final prong "requires a policy analysis under which the 'judge's unique vantage point and day-to-day experience with such matters lend expertise and consistency.'" *Atlas Food Sys. Servs., Inc.*, 99 F.3d at 594 (discussing a punitive damage award).

(1) Jury Instructions

MKE argues the court should grant a new trial because of improper jury instructions. However, a new trial is appropriate only if the jury instruction was erroneous and "there is a reasonable probability that the erroneous instruction affected the jury's verdict." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018). MKE has failed to show error in the jury instructions, and certainly not error that affected the verdict.

   a.   Jury Instruction No. 24

Jury Instruction No. 24, regarding the obligation of good faith and fair dealing was a correct statement of the law. Jury Instruction No. 24 provides:

> Every contract imposes an obligation of good faith in its performance, which requires that:
>
> 1)   A party may not act dishonestly in the exercise of a clear contractual right; and
> 2)   That a party may not act arbitrarily or unfairly when it has discretion in performance.
>
> Good faith cannot be implied to vary or contradict an express contractual right or obligation. The failure to act in good faith constitutes a breach of contract.

This jury instruction is a correct statement of the nuanced law in Virginia where it is true both that "every contract imposes an obligation of good faith and fair dealing . . . in its performance and its enforcement" and that "the duty of good faith does not prevent a party from exercising its explicit contractual *rights*." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 611–12 (4th Cir. 2021) (citations omitted). "It is a basic principle of contract law in Virginia, as elsewhere, that although the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad

11

faith . . . ." *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.- Connecticut*, 156 F.3d 535, 542 (4th Cir. 1998).

MKE takes specific issue with the instruction that "a party may not act dishonestly in the exercise of a clear contractual right" arguing that the implied covenant of good faith and fair dealing is not applicable to clear contractual rights. MKE claims that Instruction No. 24 "improperly permitted the jury to find a breach of contract based purely on considerations of perceived fairness and sympathy . . . ." Dkt. 456 at 41.  However, that "a party may not act dishonestly in the exercise of a clear contractual right" is an accurate statement of Virginia law, especially when read as a whole, as is proper. While a party may act arbitrarily in exercising its clear contractual rights, it may not act dishonestly. *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 386 (Va. 1996); *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (the duty of good faith can be breached if the exercise of a contractual right is "not merely unfavorable, but actually dishonest"). Finally, the jury instruction is clear that the obligation of good faith cannot be used to vary or contradict express contractual terms. The implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am., Inc.,* 493 S.E.2d 516, 520 (Va. 1997).

    b.  Jury Instruction No. 20

Jury Instruction No. 20, regarding evidence of course of performance was likewise a proper instruction. Jury Instruction No. 20 provides:

> The parties' course of performance may be relevant in determining the meaning of the parties' agreement. However, any interpretation suggested or supported by the acts of the parties must be reasonable and not in conflict with the actual terms of the contract.

MKE argues the court should not have given this Instruction because it improperly suggested the 2019 Agreement was ambiguous. However, contrary to MKE's contention that the court should not have directed the jury to consider the parties' conduct to modify the contract's terms, Instruction 20 specifically states that any interpretation must not "conflict with the actual terms of the contract." In any event, the Instruction was a correct statement of the law and the relevance of course of performance, and appropriate for this case.

    c.   Jury Instruction No. 23

Jury Instruction No. 23 was appropriate and a proper statement of the law. This instruction provided:

> A party to a contract who wrongfully hinders or prevents the other party from performing its obligations under a contract has breached the contract if such prevention caused it not to perform. However, this principle does not apply when the hindrance is due to action taken by a party which it is permitted to take under the terms of the contract.

Contrary to MKE's argument that this Instruction improperly "suggested to the jury that MKE's contractually-allowed actions" could be considered a breach of the 2019 Agreement, the Instruction specifically states that the principle does not apply when the action taken is permitted under the contract. Further, there was sufficient evidence to justify this instruction, including that MKE prevented Zenith's performance under the contract by keeping the June down payment, despite not being able to fulfill the order, and then not adjusting the installment debt payment and terminating the agreement.

    d.   Jury Instruction No. 34.

Jury Instruction No. 34 properly instructed the jury on fair use, providing:

> Zenith contends that its use of the MKE mark after termination of the 2019 Agreement constitutes fair use. Zenith is allowed to use the MKE mark to accurately identify products as originating from MKE, but may

13

> not use the mark any more than necessary to sell MKE products or to create a false suggestion of endorsement from MKE of Zenith.

MKE argues the court should not have given Instruction No. 34 because it constitutes an affirmative defense that Zenith failed to plead and, even if it is not an affirmative defense, a separate fair use instruction was improper. As Zenith points out, however, the Fourth Circuit has not held that nominative fair use is an affirmative defense. Further, as both parties emphasize in their briefs, I explained at trial that Zenith's use of the MKE trademark to sell MKE products is conduct Zenith has long contended is permitted.

(2) Testimony Regarding the <u>Ohntrup</u> Judgment and Breaches of the 2017 Agreement

MKE asks for a new trial on the grounds that Zenith's repeated and excessive prejudicial discussion of the <u>Ohntrup</u> Judgment and 2017 Agreement improperly swayed the jury and "far exceeded" the boundaries set by the Court. In support, MKE catalogues Zenith's references to the <u>Ohntrup</u> Judgment during trial, including in the opening statement, the testimony of Mr. and Mrs. Kaya, and closing argument. However, MKE did not object to the references to the <u>Ohntrup</u> Agreement during opening or closing argument. Courts will not grant a motion for a new trial where the moving party has failed to timely object unless "exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." *Dennis v. Gen. Elec. Corp.*, 762 F.2d 365, 367 (4th Cir. 1985). Further, as discussed previously, references to the <u>Ohntrup</u> Judgment during trial generally complied with my previous order, did not prejudice MKE, and do not merit a new trial. In fact, I was clear during trial that references to the <u>Ohntrup</u> Judgment were fair game, with my main concern being that the jury not mistakenly conflate personal injury or products liability issues from the <u>Ohntrup</u> case, with the instant case, which did not happen. Trial. Tr. Nov. 29, 2023,

14

Dkt. 442 at 8. I stated I would allow discussion of the <u>Ohntrup</u> Judgment, including that paying it off was an important part of the parties' 2019 Agreement. *Id.*

Regarding the 2017 Agreement, MKE complains that Zenith improperly referenced a misapplied $197,000.00 payment in opening statements. On MKE's objection to this reference, Zenith acknowledged that the parties were not litigating the $197,000.00 payment, and it was not a claim in the lawsuit; instead, it was "part of the story" and the relationship between the parties. Tr. Tr. Nov. 28, 2023, Dkt. 441 at 180. My ruling allowed discussion about how payments were applied, but I did not allow "any suggestion that Zenith is entitled to some type of credit for a payment that was applied differently." *Id.* Contrary to MKE's arguments, Zenith was not subsequently permitted to testify outside the bounds of this ruling, including in the testimony of Mr. and Mrs. Kaya.

### III.     Conclusion

Accordingly, the court will deny MKE's motion for judgment as a matter of law, and motion for a new trial. An appropriate order accompanies this opinion.

Entered:  July 24, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge